IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

CEQUENT CONSUMER )
PRODUCTS, INC. )
an Ohio Corporation, )
                                ) Case No. 1:09-cv-02905-DAP
      Plaintiff, )
                                )
      vs. )
                                )
HOPKINS MANUFACTURING )
CORPORATION )
a Kansas Corporation )
                                )
      Defendant. )

## DECLARATION OF BRADLEY T. KRAFT

I, Bradley T. Kraft, declare:

1.     I reside in Emporia, Kansas and am the President and Chief Executive Officer of Hopkins Manufacturing Corporation ("Hopkins").

2.     Hopkins is a leading innovator and supplier of automotive aftermarket products. Hopkins is headquartered in Emporia, Kansas.

3.     Hopkins sells a line of automotive electrical towing products under its Hopkins Towing Solutions® trademark to major retailers such as Pep Boys, AutoZone, and Advance Auto.

4.     Cequent has been marketing a similar line of automotive electrical towing products under the Reese and Reese Towpower™ trademarks to Hopkins' major retail customers. It is my understanding and belief that: (i) the Cequent entity responsible for the development, manufacture, marketing and sale of these products has, until recently, been

Cequent Towing Products, Inc., a Delaware corporation which conducts its operations from the Detroit, Michigan metropolitan area; and (ii) responsibility for the marketing and sales of these products was recently transferred to Cequent Consumer Products, Inc., an Ohio corporation. It is my further understanding and belief from information available on Cequent's website and from country of origin labeling that the manufacture of these products occurs at a Cequent manufacturing facility in Mexico and at manufacturing facilities in Taiwan and China. A true and correct copy of a printout of a page from Cequent's website is attached hereto as Exhibit A.

5. Beginning in August of 2009, I heard rumors that Cequent was adding new products to its Reese Towpower™ product line in an attempt to better compete with the Hopkins Towing Solutions® product line.

6. I first viewed the new Reese Towpower™ product offerings on November 2-5, 2009 at the Automotive Aftermarket Products Expo ("AAPEX") trade show at the Sand Expo Center in Las, Vegas, Nevada. At the AAPEX trade show I observed a Reese Towpower™ product display and obtained a product brochure, a copy of which is attached hereto as Exhibit B.

7. Upon my return to my office following the AAPEX trade show, I gave the Reese Towpower™ brochure to Gary Kaminski, Engineering Director at Hopkins, and asked him to investigate whether there were any products depicted in the brochure that might infringe any Hopkins patents.

8. I was subsequently informed that the brochure depicted at least one product that appeared to infringe U.S. Patent No. 6,749,438 ("the '438 patent") entitled "Towing Connector." The '438 patent is owned by Hopkins and the records relating to the research, development, and patenting of that invention are located at Hopkins' headquarters in Emporia, Kansas or at the offices of its patent counsel in Overland Park, Kansas. The '438 patent is directed to an adapter

which is used to interconnect the electrical wiring on a vehicle to the electrical wiring on a trailer so that activation of the turn signals and brake lights on the vehicle causes simultaneous activation of the corresponding lights on the trailer.

9. Sometime during the first week of December, 2009, I attempted to contact Tom Benson, with whom I am acquainted and who is President of Cequent Towing Products, Inc., to discuss our infringement concerns. After an exchange of phone messages, I was able to talk with Mr. Benson on December 8, 2009, and told him I wanted to see if we might be able to resolve the patent issues relating to their new product line. He said he would check into the matter and get back in touch with me.

10. On December 9, 2009, Mr. Benson responded by e-mail and informed me that he was not responsible for the products in question and he referred me to John Aleva, President of Cequent Consumer Products, Inc.

11. I did not know Mr. Aleva, so I instructed Hopkins' attorney, Tom Luebbering, to send him a letter notifying him of our infringement concerns and requesting that he or his attorney contact us in an attempt to resolve the situation. A copy of Mr. Luebbering's letter dated December 11, 2009, is attached hereto as Exhibit C.

12. On that same day, December 11, 2009, I visited one of our major retail accounts, Pep Boys, in Pennsylvania and in discussions with Walt Kobilnyk, Category Manager at Pep Boys, I indicated we were addressing patent issues concerning at least one new product in Reese's new product line.

13. On December 14, 2009, I received an e-mailed letter from David Cupar, Cequent's attorney, demanding that Hopkins raise any infringement issues directly and immediately in writing to Cequent. A copy of Mr. Cupar's letter is attached hereto as Exhibit D.

14. On December 15, 2009, Mr. Luebbering responded to Mr. Cupar's letter by resending his December 11, 2009, letter and stating, "We look forward to receiving your response to our infringement concerns." A copy of Mr. Luebbering's letter is attached hereto as Exhibit E.

15. That same day, Cequent filed suit against Hopkins in federal court in Ohio.

16. Other than by filing the Ohio suit, Cequent has not responded to the requests in our December 11 and December 15, 2009 letters that Cequent contact us in an attempt to resolve the infringement issues.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/15/10

Bradley T. Kraft